O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE LOPEZ RAMIREZ, an individual, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF GLENDALE, a municipal corporation; Police Officer AARON ZEIGLER; Corrections Officer ISABEL RIVAS; Chief of Police CARL POVILAITIS; and Does 1 through 20, <br><br> Defendants. | Case No.  19-cv-4126 DDP (AFMx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> [Dkt. 29] |

Presently before the court is Defendants' Motion for Summary Judgment.  (Dkt. 29.)  Having considered the submissions of the parties and heard oral argument, the court grants Defendants' motion and adopts the following order.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I. BACKGROUND**

On May 13, 2017, Glendale Police Department Sgt. Aaron Zeigler ("Sgt. Zeigler") was dispatched to the area of 120 S. Maryland in Glendale for a reported assault.  (Dkt. 29, Zeigler Decl. ¶ 2.)  Zeigler was accompanied by a trainee officer, Nikole Ramirez ("Officer Ramirez").  (*Id.* ¶ 1.)  The reporting party, Carmen Medina ("Medina"), contacted the Glendale Police Department to report "some guy [ ] pushing [her]."  (Dkt. 29, Ex. 1, Ramirez Depo. at 20:19-25, 21:1-4.)  According to Plaintiff George Lopez Ramirez ("Plaintiff"), Plaintiff and Medina were arguing when Medina continuously tried to grab Plaintiff's phone.  (*Id.* at 19:13-18.)  In response, Plaintiff "grabbed [Medina's] arm" and "kept pushing her hand away".  (*Id.*)  Medina told Plaintiff that she was going to call the police and called the police while Plaintiff was present.  (*Id.* at 20:1-25.)

Although the precise sequence of events upon Sgt. Zeigler's arrival to the scene is disputed, it is undisputed that Sgt. Zeigler spoke to both Medina and Plaintiff during the course of his investigation.  Plaintiff does not dispute that Medina informed Sgt. Zeigler that Plaintiff "grabbed her arms and shook her."  (Zeigler Decl. ¶ 3.)  According to Sgt. Zeigler, he formed the opinion that Plaintiff was the aggressor in the incident and that Plaintiff had "unlawfully touched [Medina] in violation of Penal Code section 243(e)(1)."  (Zeigler Decl. ¶ 7; Dkt. 36, Ex. 3.)  Sgt. Zeigler then spoke to Plaintiff.  While Sgt. Zeigler was with Plaintiff, Officer Ramirez conducted a record check on Plaintiff; the record check revealed that there was an outstanding warrant that matched Plaintiff's name, date of birth,[1] and driver's license number.  (Zeigler Decl. ¶ 6.)  Sgt. Zeigler informed Plaintiff

---

[1] Plaintiff contends that the warrant did not match his date of birth.  No party submitted the warrant as evidence in this action.  Nonetheless, as discussed below, this disputed fact is not material for the purposes of determining probable cause.

that there was a warrant related to a DUI in the City of Los Angeles or Compton "or something like that". (Ramirez Depo. at 29:11-17.)

Plaintiff does not dispute that Sgt. Zeigler informed Plaintiff of the outstanding warrant matching Plaintiff's name and license number. (Ramirez Depo. at 29.) Plaintiff also does not dispute that the warrant exists and that his name and license number match the warrant. At his deposition, Plaintiff explained that approximately twenty years prior to the date at issue, a California Highway Patrol officer informed Plaintiff that a warrant existed matching Plaintiff's license number—likely the result of Plaintiff's license number and name being sold on a black market. (Ramirez Depo. at 31-33.) Around that same period of time, a court issued Plaintiff a "green [ ] document" stamped by the court containing the warrant number and clearing Plaintiff from the warrant should a police officer in the future run his license. (Ramirez Depo. at 31-33.) Plaintiff carried the clearing document for approximately five to six years and eventually lost track of the document. (*Id.* at 33:3-18.) According to Plaintiff, Plaintiff told Sgt. Zeigler that the warrant was not for him. (Ramirez Depo. at 40:1.) Plaintiff also contends that while he was sitting in the back of the patrol car, he viewed the warrant on the open computer screen and saw that the warrant did not match his date of birth, social security number, or signature and informed Sgt. Zeigler of these discrepancies. (*See* Ramirez Depo. at 40:18-24.)

In this action, Plaintiff maintains that he was arrested solely on the basis of the twenty-year old warrant that contained various discrepancies—not for domestic violence/battery. In support of his position, Plaintiff testified that Sgt. Zeigler told him that Medina did not want to "press charges," and that the officers were going to "run [his] license" and would be on his way "if [Plaintiff] had no wants or warrants." (Ramirez Depo. at 26:15-23.) According to Defendants, however, Sgt. Zeigler arrested Plaintiff for violation of Penal Code § 243(e)(1), battery to a person with whom the

defendant currently has, or previously had, a dating relationship, and for the outstanding warrant.  (Zeigler Decl. ¶ 7; Dkt. 36, Zeigler Decl., Ex. 3.)

After arresting Plaintiff, Sgt. Zeigler transported Plaintiff to the Glendale Police Department.  Custody Officer Takuhi Akelian ("Officer Akelian") processed and booked Plaintiff.  (Dkt. 29, Akelian Decl. ¶ 1-2.)  During the booking process, Officer Akelian ran Plaintiff for wants and warrants and confirmed a warrant matching Plaintiff's name and license number existed.  (*Id.* ¶ 3.)   Plaintiff was in custody from Friday, May 13, 2017 to Monday, May 16, 2017.  (Ramirez Depo. at 51:5-7; Dkt. 29, Ex. 2.)  Plaintiff was eligible to post bail prior to going to court but did not do so.  (Akelian Decl. ¶ 3.)  On May 16, 2017, the District Attorney declined to file a case against Plaintiff.  (*Id.* ¶ 5; Ramirez Depo. at 49:10-51:4.)  Plaintiff was issued a citation to appear before the Compton Court, Division 12 for the outstanding warrant and was thereafter released.  (Dkt. 29, Ex. 2.)  With representation, Plaintiff appeared before the Compton Court and was provided a clearing "green paper" similar to what he was provided twenty years prior to the incident.  (Ramirez Depo. at 53:5-25.)

Based on the events described above, Plaintiff brings this action against the City of Glendale a municipal corporation, Police Officer Aaron Zeigler, Corrections Officer Isabel Rivas, and Chief of Police Carl Povilaitis (collectively, "Defendants").  (*See* Dkt. 1, Compl.)  Plaintiff raises the following causes of action: (1) False arrest in violation of the Fourth Amendment (42 U.S.C. § 1983); (2) unreasonable detention in violation of the Fourteenth Amendment (42 U.S.C. § 1983); and (3) *Monell* liability against the City of Glendale for failure to train, supervise, and discipline (42 U.S.C. § 1983).

Defendants now move for summary judgment on all claims.  (Dkt. 29, Motion for Summary Judgment ("MSJ").)

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that

4

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

### III. DISCUSSION

Defendants move for summary judgment on all claims contending that probable cause existed to detain and arrest Plaintiff for domestic violence/battery and for the warrant matching Plaintiff's name, driver's license number, and date of birth.  (MSJ at 6-7.)  Even if no probable cause existed, Defendants argue that Sgt. Zeigler is entitled to qualified immunity.  (*Id.* at 7-8.)  Defendants also contend that absent an underlying constitutional violation, the City of Glendale cannot be held liable under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  (*Id.* at 9-10.)  Defendant Officer Rivas and Defendant Chief Carl Povilaitis move for summary judgment in their favor because they did not have any involvement in Plaintiff's arrest or detention.  (*Id.* at 10.)

Section 1983 provides, in pertinent part, "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  "[A] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, 'if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  Individual police officers can only be held liable under Section 1983 upon a showing of personal participation in the alleged wrongdoing; "there is no respondeat superior liability under section 1983."  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Personal participation can be demonstrated by showing an officer's "integral participation" via "some fundamental involvement in the conduct that allegedly caused the violation," *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007), or by showing that the individual failed to intervene when the individual "had a constitutional duty to intervene" to prevent the alleged injury.  *Ting v. United States*, 927 F.2d 1504, 1511

(9th Cir. 1991).  Supervisors can also be liable under Section 1983.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  Although there is no respondeat superior liability, a supervisor may be held liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.*

### A.  False Arrest and Detention

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (quotations omitted). Probable cause exists when, based on the totality of the circumstances known to officers at the time, there is a "fair probability or substantial chance of criminal activity." *Id.* at 1018.  "The determination whether there was probable cause is based upon the information the officer had at the time of making the arrest." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).  Relevant here, California Penal Code Section 242 provides that battery is "any willful and unlawful use of force or violence upon the person of another." Cal. Pen. Code § 242.  Section 243(e)(l) provides the punishment applicable for "battery [ ] committed against a spouse, . . . or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship . . . ." Cal. Pen. Code § 243(e)(1).

Plaintiff does not dispute that Medina contacted Glendale Police and reported that there someone was "pushing" her.  Further, Plaintiff does not dispute that Medina informed Sgt. Zeigler that Plaintiff "grabbed her arms and shook her." (Zeigler Decl. ¶ 3; *see* Opp.)  Instead, Plaintiff appears to contend that because Medina also told Sgt. Zeigler, that she did not want to "press charges," Sgt. Zeigler did not have probable cause to arrest him for battery.  (Dkt. 32, Opp. at 7.)  Plaintiff cites to no authority for this proposition.  Battery is "any willful and unlawful use of force or violence upon the person of another." Cal. Pen. Code § 242.  Whether a victim wishes to "press charges" is

irrelevant for purposes of Section 242.  Under the totality of the circumstances known to Sgt. Zeigler at the time, and based on the undisputed evidence, Sgt. Zeigler had probable cause to arrest Plaintiff for battery because he received information that Plaintiff grabbed Medina's arms and shook her.  Plaintiff's claims of false arrest and unlawful detention fail.[2] [3]

Because the court concludes that probable cause existed for Plaintiff's arrest, the court declines to reach whether Sgt. Zeigler had probable cause to arrest Plaintiff based on the warrant.  *See United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) ("[I]f the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as the basis for the arrest, a different offense as to which probable cause was lacking." (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)).

**B.** *Monell* **Liability**

In *Monell v. Dept of Soc. Servs.*, the Supreme Court held that municipalities and other local government units could be held liable under section 1983.  436 U.S. 658, 691 (1978).  The Court explained, however, that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words . . . on a respondeat superior theory." *Id*. at 691.  Rather, a plaintiff must establish that the constitutional violation was caused

---

[2] Plaintiff also argues that Sgt. Zeigler never informed him that he was arrested for battery nor read Plaintiff his Miranda rights.  (Opp. at 7:13-14.)  Even if these facts were material to the issue of probable cause, Defendants have submitted an audio recording where Sgt. Zeigler can be heard Mirandizing Plaintiff, explaining to Plaintiff the reasons for his arrest, including the domestic violence/battery report, and then questioning Plaintiff regarding the incident with Medina.  (Dkt. 36, Ex. 4 at [9:49-11:30].)  Plaintiff has not submitted any evidence disputing the audio recording.

[3] Defendant Officer Isabel Rivas and Chief Carl Povilaitis move for judgment in their favor because they were not involved in Plaintiff's arrest.  Plaintiff has not submitted any evidence demonstrating that these Defendants personally participated in his arrest or took any other action in which individually liability could be imposed.  For this additional reason, the court grants summary judgment in favor of Defendant Officer Isabel Rivas and Chief Carl Povilaitis.  *See Jones*, 297 F.3d at 934.

by "a policy, practice, or custom of the entity." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). A plaintiff must identify the training or hiring practices and policies that plaintiff alleges are deficient, explain how such policy or practice was deficient, and explain how such a deficiency caused harm to the plaintiff. *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149-50 (E.D. Cal. 2009).

Plaintiff has failed to present any evidence supporting his claim that a City of Glendale policy, practice, or custom caused a constitutional violation. Plaintiff argues in his opposition that the City of Glendale has a custom of "falsely" detaining citizens. However, as discussed above, Sgt. Zeigler had probable cause to detain Plaintiff for battery. Plaintiff has not presented any evidence supporting his theory that he was somehow "falsely" detained. Defendant has sufficiently demonstrated that there is an absence of evidence supporting Plaintiff's *Monell* claim on which Plaintiff has the burden at trial. *See Celotex*, 477 U.S. at 323.

**IV. CONCLUSION**

For the reasons stated above, the court grants Defendants summary judgment on all claims as to all Defendants. This action is dismissed with prejudice. Each party shall bear their own costs.

**IT IS SO ORDERED.**

Dated: December 14, 2020

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

9